IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Brian T. Roberts, | ) | Civil Action No.  8:15-cv-00076-TMC-JDA |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Carolyn W. Colvin, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to Local Civil Rule 73.02(B)(2)(a), D.S.C., and 28 U.S.C. § 636(b)(1)(B).[1] Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying Plaintiff's claim for disability insurance benefits ("DIB").  For the reasons set forth below, it is recommended that the decision of the Commissioner be affirmed.

## PROCEDURAL HISTORY

According to the Commissioner, Plaintiff filed an application for DIB in February 2013, and for social security income ("SSI") in December 2012, alleging disability beginning December 1, 2006.[2]  [R. 13; Doc. 22 at 2.]  These claims were denied initially and on reconsideration by the Social Security Administration ("the Administration").  [R. 58–67,

---

[1] A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

[2] The Court notes discrepancies in the record regarding filing and alleged onset dates. The record appears to show Plaintiff filed for DIB on December 7, 2012, and for SSI on February 4, 2013.  [R. 165–74.]  Plaintiff does not appear to contest these dates.  Further, while Plaintiff now alleges disability due to PTSD commencing in 2006, in his DIB and SSI applications, he alleged disability beginning January 1, 2009.  [*Id.*]

68–79, 84–97, 98–116.]  Plaintiff requested a hearing before an administrative law judge ("ALJ"), and on June 25, 2014, ALJ Ann G. Paschall conducted a hearing on Plaintiff's claims.  [R. 26–46.]  Although informed of the right to representation, Plaintiff chose to appear and testify without the assistance of an attorney or other representative.  [R. 29.]

The ALJ issued a decision on August 27, 2014, finding Plaintiff not disabled under the Social Security Act ("the Act") prior to December 6, 2012, therefore Plaintiff was not entitled to DIB because his date last insured was September 30, 2008.  [R. 13.]  However, finding Plaintiff became disabled on December 6, 2012, and continued to be disabled through the date of the ALJ's decision, the ALJ found Plaintiff was entitled to SSI.  [R.13, 20.]

At Step 1,[3] the ALJ found Plaintiff met the insured status requirements of the Act through September 30, 2008, and had not engaged in substantial gainful activity since the alleged onset date of December 1, 2006.  [R. 15, Findings 1 & 2.]  At Step 2, the ALJ found that, since  the alleged onset date of disability, Plaintiff had the following severe impairment: bilateral degenerative joint disease of the shoulders. [R. 15.]  The ALJ also found that, beginning on the established onset date of disability, December 6, 2012, the claimant has had the following severe impairments: post-traumatic stress disorder ("PTSD"), depression, somatoform disorder, degenerative joint disease involving bilateral shoulders, bilateral tinnitus, cervical stenosis and obesity.  [R. 15, Finding 3.]  At Step 3, the ALJ determined that, prior to December 6, 2012, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the criteria of one of the

---

[3]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 16, Finding 4.] The ALJ specifically considered Listing 1.02, noting the evidence failed to show a major dysfunction of the joint resulting in an inability to perform fine and gross movements effectively. [*Id*.]

Before addressing Step 4, Plaintiff's ability to perform his past relevant work, the ALJ found Plaintiff retained the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, I find that prior to December 6, 2012, the date the claimant became disabled, the claimant had the residual functional capacity to perform the full range of light work.

[R. 16, Finding 5.] Based on this RFC, the ALJ determined that, since December 1, 2006, Plaintiff was unable to perform his past relevant work as a machinery technician for the Coast Guard. [R. 17, Finding 6.] However, based on Plaintiff's age, education, and work experience, and RFC, the ALJ determined that, prior to December 6, 2012, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. [R. 17, Finding 10.] Accordingly, the ALJ found that, beginning December 6, 2012, the severity of the claimant's PTSD met the criteria of section 12.06 of 20 CFR Part 404, Subpart P, Appendix 1 [R. 28, Finding 11], but that Plaintiff was not disabled prior to September 30, 2008, the date last insured [R. 20, Finding 13]. The ALJ concluded that Plaintiff was not under a disability within the meaning of the Act at any time through September 30, 2008, the date last insured for purposes of DIB; however, Plaintiff was entitled to SSI based on the application filed December 6, 2012. [R. 20.]

Plaintiff requested Appeals Council review of the ALJ's decision, and the Council declined review.  [R. 1–5.]  Plaintiff, proceeding pro se,  filed this action for judicial review on January 7, 2015.  [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff, proceeding pro se, does not allege any specific error in the ALJ's analysis. [Doc. 19.]  Plaintiff asserts that he is "indeed a 100% service disabled veteran" and that he suffers from multiple issues that hinder him from obtaining and maintaining substantial employment.  [*Id*. at 1.]  Plaintiff points out that the Department of Veterans Affairs ("the VA") has deemed him totally disabled due to PTSD alone, and he argues that he has been totally disabled since December 2006. [*Id* at 1–2.]  Plaintiff contends his difficulties began in 2006 in that he was unable to work and suffered financial hardships and a divorce as a result, and that the VA failed to properly diagnose him back in 2006 with PTSD.  [*Id*. at 2.] Plaintiff seeks to have the Court give him the "benefit of the doubt as there is substantial evidence he has not been able to nor has he worked since December 2006 and award him disability benefits beginning December 1, 2006." [*Id*. at 3.]

The Commissioner contends that, contrary to Plaintiff's arguments, the medical record demonstrates that Plaintiff was not disabled prior to his date last insured ("DLI"), and the ALJ properly analyzed the record during the relevant period.  [Doc. 22 at 1.]  The Commissioner asserts that it was the Plaintiff's burden to establish that he was disabled during the period between December 1, 2006, and September 30, 2008, and he failed to meet his burden.  [*Id*. at 9.]  The Commissioner points out that the ALJ found "no evidence that Plaintiff received treatment for any mental impairment before his insured status

4

expired on September 30, 2008" and that the record provides no "inference of linkage" to the period pre-DLI and, therefore, retrospective consideration of Plaintiff's post-DLI evidence was not required. [*Id.* at 10.] The Commissioner contends that substantial evidence supports the ALJ's finding that Plaintiff is not entitled to DIB and the Commissioner's decision should be affirmed. [*Id.* at 12.]

## STANDARD OF REVIEW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S.97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, a pro se complaint is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Court's Scope of Review in Social Security Actions**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the

evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963))("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision). Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *See Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the

7

Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Comm'r*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand."). After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction. *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's

8

failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[4]  With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings.  *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

---

[4]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence.  *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply the more stringent *Borders* inquiry.

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability. 42 U.S.C. § 423(a). "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment. 20 C.F.R. § 404.1520. Through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). The claimant must prove disability on or before the last day of her insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. &*

*Welfare*, 412 F.2d 842, 843 (4th Cir. 1969).  If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience.  *Grant*, 699 F.2d at 191.  If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary.  20 C.F.R. § 404.1520(a); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 404.1572(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 404.1572(b).  If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity.  *Id.* §§ 404.1574–.1575.

### B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See id.* § 404.1521.  When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments.  42 U.S.C. § 423(d)(2)(B).  The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the

[Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. § 423(d)(2)(B).

### C.     *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 404.1509, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(d).

### D.     *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995). At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[5] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work. 20 C.F.R. § 404.1560(b).

---

[5]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a).

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992); 20 C.F.R. § 404.1520(f)–(g).    To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").    Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[6]  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *see also Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations).    When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931. In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work.   20 C.F.R. § 404.1569a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of

---

[6]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs.  20 C.F.R. § 404.1569a(a).  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing.  § 404.1569a(c)(1).

exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy.").  The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform."  *Walker*, 889 F.2d at 50.  For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments."  *Id.* (citations omitted).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.  *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant issue.  *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important when a claimant appears without counsel.  *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980).  In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited."  *Id.* (internal quotations and citations omitted).

## III.   Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(c)(2); *see Mastro v. Apfel*, 270

14

F.3d 171, 178 (4th Cir. 2001).  The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. § 404.1527(c).  Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 404.1527(c)(2).  An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways.  *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986).  Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a

15

claimant is disabled.  20 C.F.R. § 404.1527(d).  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  *Id.*

## IV.     Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 404.1517; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986).  The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability.  20 C.F.R. § 404.1517.  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  *Id.*

## V.     Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree,

16

alleged by the claimant.'" *Id.* (quoting *Craig*, 76 F.3d at 594).  Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain."  *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs."  *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990).  The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
>
> ...

17

> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. § 404.1529(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.     Credibility

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such

18

determinations should not be sustained if they are based on improper criteria.  *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor.  But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

### Substantial Evidence Evaluation

Plaintiff asserts he has been disabled since December 2006 but that, due to a broken VA System, he was misdiagnosed/underdiagnosed for many years until he was screened for PTSD.  [Doc. 19 at 2.]  Plaintiff argues that there is substantial evidence to demonstrate that he has been disabled since December 2006.  [*Id.* at 3.]   The Commissioner contends that substantial evidence supports the ALJ's finding that Plaintiff is not entitled to DIB and the Commissioner's decision should be affirmed.  [Doc. 22 at 8–12.]

#### Pertinent Medical Evidence

Treatment notes from the VA dated September 13, 2006, indicate Plaintiff was being seen for the first time for worsening chronic shoulder pain.  [R. 355.]  After a relatively benign exam, Plaintiff was diagnosed with chronic bilateral shoulder pain, treated with over-the-counter ibuprofen and referred for physical therapy; was referred for a hearing implant; had an x-ray of his shoulders to assess worsening pain; and engaged in discussion regarding lifestyle modifications.  [R. 358.]  Treatment notes from October 11, 2006,

indicate Plaintiff was a "no show" for an occupational therapy appointment for shoulder therapy.  [R. 352.]

The next treatment notes of record are dated almost four and one half years later in March 16, 2011, and indicate that Plaintiff "feel[s] great", but wants "to get back into the system."  [R. 346.]  On general exam of Plaintiff's extremities, crepitations and passive range of motion ("ROM") of the bilateral shoulders with no limitations on ROM were noted. [R. 347.]  Plaintiff's shoulder pain was, again, treated with over-the-counter ibuprofen; he was referred to audiology for a hearing implant; he was referred to physical therapy for his shoulder pain; and also sent for x-ray to assess his worsening shoulder pain.  [*Id.*]  A depression screen was administered and Plaintiff was noted to be negative for depression. [R. 349.]  On December 14, 2011, Plaintiff sent an email to the VA noting that he was experiencing a lot of pain in his neck and shoulders which was severe and that he needed an appointment.  [R. 342.]

Plaintiff filed a claim for entitlement to compensation with the VA and was awarded compensation due to his service connection for PTSD effective January 29, 2012.  [R. 201.]  The VA assigned a 70 percent evaluation for PTSD based on Plaintiff's neglect of personal appearance and hygiene; suicidal ideation; occupational and social impairment with reduced reliability and productivity; difficulty in establishing and maintaining effective work and social relationships; disturbances of motivation and mood; anxiety, chronic sleep impairment; depressed mood; and memory loss.  [R. 204.]  The VA found that, due to a likelihood of improvement, the assigned evaluation was not considered permanent and was subject to a future review examination.  [R. 204.]  The VA also denied Plaintiff's request for benefits based on unemployability based on his service related impairments because

they found "the evidence of record does not show [Plaintiff] to be so severely disabled as to preclude all forms of gainful employment due to [his] service connected disabilities." [R. 209.] The VA also concluded that, "[b]ased on the objective evidence of record, it is the opinion of the agency that your service connected conditions do not preclude you from holding an occupation, including but not limited to a sedentary position." [R. 210.]

Treatment records show Plaintiff began treatment with Piedmont Health Group, Dr. Dan Robinson, Jr. ("Dr. Robinson") beginning in February 2012. [*See* R. 561.] On March 23, 2012, Plaintiff was seen for his shoulder pain. [R. 341.] Physical examination showed normal shape and contour of the shoulder with normal passive ROM; pain with active overhead movement, and neck exam "wol." [*Id*.] Plaintiff was diagnosed with anterolateral shoulder pain, worse by reaching overhead, and likely impingement syndrome. [*Id*.] On April 25, 2012, Plaintiff was seen for PTSD and depression screening, both of which were positive. [*See* R. 335, 338.] A psychiatric consult for PTSD was ordered [R. 334] and Citalopram was prescribed for depression [R. 333].

In May 18, 2012 , the VA conducted an "Initial Post Traumatic Stress Disorder ("PTSD") Disability Benefits Questionnaire". [R. 476.] Based on clinical findings, the VA confirmed Plaintiff's PTSD conforms to DSM-IV criteria. [R. 477.] The VA noted Plaintiff's symptoms included depressed mood; anxiety; chronic sleep impairment disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships; and difficulty in adapting to stressful circumstances, including work or a work like setting. [R. 485.]

Plaintiff was seen on April 12, 2013, on consultative exam by Dr. Tony Rana ("Dr. Rana") who noted Plaintiff reported he has suffered from PTSD over the past six years,

21

hearing deficit and tinnitus in both ears since the 1990s, and neck and shoulder pains for the past four years.  [R. 510–11.]   Dr. Rana noted that Plaintiff's alleged history of PTSD appears quite stable and that he was not being treated with psychotropic medications.  [R. 512.]  A subsequent consultative exam on August 7, 2013, by Dr. Ron Thompson ("Dr. Thompson") concluded that Plaintiff, who was still not taking any medication for PTSD, was in need of intensive psychotherapy and a comprehensive review of his psychiatric profile; even psychiatric admission for several days to regulate his mood and attitude.  [R. 565.]

**Discussion**

The ALJ found Plaintiff disabled for purposes of SSI on December 6, 2012, however, the ALJ also found Plaintiff was not disabled during the relevant time period for purposes of DIB.  [R. 13, 18–20.]   After a careful review of the entire record, the undersigned finds the ALJ properly considered the medical evidence and her decision is supported by substantial evidence in the record.

For a claimant to establish eligibility for DIB, he must demonstrate two essential elements: (1) a disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months," 42 U.S.C. § 423(d)(1)(A); and (2) a disability at the time the claimant has disability insurance status, *id*. § 423(a)(1)(A); 20 C.F.R. § 404.131(a).   Thus, a claimant must establish the presence of a disability prior to the last day of his disability insurance status. *Johnson v. Barnhart*, 434 F.3d 650, 655-56 (4th Cir. 2005).  Whether he is represented or not, plaintiff bears the burden of proof, and he is responsible for providing evidence to

support his application and demonstrate disability.  *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1512(a) & (c).

Although the claimant for DIB must establish the presence of a disability prior to his last date insured ("DLI"), medical evidence produced after the DLI is generally admissible if such evidence "permits an inference of linkage with the claimant' s pre-DLI condition." *Bird v. Comm'r of Soc. Sec*., 699 F.3d 337, 341 (4th Cir. 2012).  Indeed, the Fourth Circuit Court of Appeals noted in *Bird* that often the "most cogent proof" of a claimant's pre-DLI disability comes from retrospective consideration of subsequent medical records. *Id*. (citing *Moore v. Finch*, 418 F.2d 1224, 1226 (4th Cir. 1969)).  Accordingly, "retrospective consideration of evidence is appropriate when 'the record is not so persuasive as to rule out any linkage' of the final condition of the claimant with his earlier symptoms."  *Id.* (quoting *Moore*, 418 F.2d at 1226).  If there is no evidence linking additional impairments to the claimant's condition prior to his DLI, however, the ALJ is not required to retrospectively consider that information.  *Id*.

In light of the above medical history of record, the Court finds no error with the ALJ's conclusion that Plaintiff was not disabled during the relevant time period of December 6, 2006, through September 30, 2008.  As an initial matter, the Court notes the ALJ conducted an analysis of Plaintiff's claims which is consistent with the regulations, and with the *Bird* decision, 699 F.3d 337, and the ALJ adequately explained her consideration of the evidence and her weighing of the same.  Plaintiff provided no evidence of disabling limitations due to PTSD or treatment for PTSD during the relevant time period for his DIB claim.  Plaintiff was not positively screened for PTSD until on or about April 25, 2012.  [*See*

23

R. 335, 338.] The VA did not find that Plaintiff's PTSD met DSM-IV criteria until May 18, 2012. [R. 477.] While Plaintiff alleges his PTSD was the impetus for his losing his business, home and wife, this allegation is speculative, at best, and is not supported by any objective evidence of record. And, importantly, there is no opinion by any medical doctor opining that Plaintiff's PTSD was present during the relevant time period. Here, unlike the ALJ's opinion in *Bird*, the ALJ clearly considered Plaintiff's post-DLI medical evidence and because there was no linkage between Plaintiff's pre-DLI condition and his post-DLI PTSD diagnosis, the ALJ was not required to give retrospective consideration to this evidence. Accordingly, the Court finds the ALJ's decision is supported by substantial evidence.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that the Commissioner's decision be AFFIRMED.

**IT IS SO RECOMMENDED**.

s/Jacquelyn D. Austin
United States Magistrate Judge

July 25, 2016
Greenville, South Carolina